May it please the Court, Teresa Reneker, on behalf of the Appellant, Mr. Reed, I'd like to reserve three minutes of my time for rebuttal, if I may. An ERISA plan must be administered strictly in accordance with its written terms. Here we have a plan that requires that its terms be interpreted in accordance with California law. And we have a term, spouse, that is left undefined and therefore subject to interpretation. And we have Mr. Reed, the registered domestic partner of Mr. Gardner, the plan participant, who has under California law the status of a spouse. Therefore, Mr. Reed is entitled to the survivor annuity that is required by Section 7.06a of the plan. You're saying under California law it has the status of a spouse. Let me ask you to be more precise as to time. Had the status of a spouse at the time of his retirement is what you're saying? That is correct, Your Honor. Now, the red brief where the KRON argues that the definition of spouse under the plan, at least at that time, had to be the Federal definition under DOMA. Is that right? That is not right. DOMA only defined the term spouse for purposes of Federal law. I understand that. And for that purpose, is ERISA Federal law? Yes. ERISA certainly is a Federal law. And DOMA defined the term spouse in ERISA. ERISA doesn't have its own definition of spouse. Well, but that cuts against your argument. So you're not meaning quite to say what you said, or maybe you want to say a little bit more as to why you look to California law for the definition of spouse under the plan. We look to California law for the definition of spouse under the plan because the plan is a private contract. And it chooses to be interpreted in accordance with California law. And that's a choice that the plan sponsor has made that has to be respected in the administration of the plan. So no, that's part one of the plan, which is the choice of law provision is California. Then the plan goes on to say California in a manner consistent with the requirements of the tax code in ERISA. So now we have to go to part two to figure out what does in a manner consistent mean. And that has a lot of questions inside of that. So rather than me trying to guide it through, would you just, in your view, what does it mean under that second part of the choice of law to be in a manner consistent? Sure. So it's in a manner consistent with the requirements of federal law. And ERISA and the code set forth minimum requirements for the provision of joint and survivor annuities to spouses. But nothing in ERISA or the code prohibits a plan from going beyond those minimum requirements. And nothing about providing a survivor benefit to a registered domestic partner would cause the plan to violate those minimum requirements. It would not cause the plan to fail to provide a joint and survivor annuity to a federally recognized spouse. The plan is perfectly able to go beyond those minimum requirements. There's nothing inconsistent with those minimum requirements about following California's definition of spouse. But does the marriage word figure in? I mean, that's another question I had. Spouse, I can follow through. It's not in ERISA-defined, but you have DOMA as kind of this big umbrella. The California law talks about domestic partners and spouses being equal for purposes of nondiscrimination. Does the word marriage figure in in interpreting in a manner consistent with? Well, the word marriage is used in the plan. So a joint and survivor annuity is required for a spouse if the spouse was married to the participant at retirement. Marriage is also defined under California law as including registered domestic partners. So, for example, Family Code Section 297.5 says that for purposes of property, and this is a property issue. Again, let me focus you on time. You mean not only present tense, but at the time of retirement? At the time of retirement, yes. At the time of the retirement, Mr. Reed and Mr. Gardner were considered married under California law. The argument that, oh, they were spouses, but they're not married, is the argument that was rejected by the Ninth Circuit Bankruptcy Appellate Panel in the Inree Rabin case. And so why, I guess, when we look at this with the standard of review that we have, which I think is a piece of discretion, and whether the plan here was reasonable, or in reviewing it, I think your argument then is that the plan was unreasonable for not focusing on California law instead of applying DOMA as the federal law. So I'm just trying to figure out why was it unreasonable when there was a definition of marriage in DOMA which seemed to control those terms in ERISA. How is it that that was unreasonable for the plan then to not provide Mr. Gardner with the waiver that was necessary? So I have a couple of responses, Your Honor. First of all, I don't agree that the standard of review is abuse of discretion. We have a case here where the plan administrator just opted out of the administrative process. And if a plan administrator can wait to be sued and then issue a decision and then get deferential review, that will really eviscerate the claim and appeal requirements of ERISA and the Code, as this Court said in the Harlech case. But the second point is that the question here is, the question of whether the plan acted reasonably in 2009 in providing Mr. Reed, excuse me, Mr. Gardner, with his benefit in the form of a single-life annuity does not go to Mr. Reed's eligibility for a survivor benefit. It goes to whether Mr. Reed has to make good the overpayment that resulted from paying the benefit as a single-life annuity. And that is this Court's Hearn case. So in the Hearn case, more or less the same thing happened. The plan paid no. Do we know, though? I mean, this is one of the things I'm struggling with, is when we look at these ERISA determinations, usually there's a little more than a result. And that's kind of what I feel like we have here. So we don't even know that the plan administrator looked at and rejected a certain interpretation of the choice-of-law provision, do we? No, we do not. Well, where does that leave us, then, standard of review-wise? You know, in the Hearn case, where the plan administrator paid a survivor a single-life annuity, and then this Court said, well, they paid a single-life annuity. They acted in good faith in doing so. Therefore, the plan gets the extra money back from the survivor, right? The standard of review didn't even factor in. This Court never discussed whether there was an abuse of the --" whether there would be an abuse of discretion review of that decision to pay the single-life annuity. It doesn't matter, because regardless of whether the ---- But as I read Hearn, I kept looking for standard of review, abuse of discretion or de novo. You're quite right. It's not there. At least, you couldn't find it. I couldn't find it. Of course, one possible explanation for that is that the plan didn't provide for discretion, in which case de novo would have been appropriate. And we just don't know. But I've got a separate question, and that is, as I look at the record as of the time of Mr. Gardner's retirement, he checks off single, which means, of course, if he's So it doesn't sound as though the plan had even the opportunity to address the question as to whether or not he's married under California law, because he said he was single, just like Mr. Hearn said falsely that he was single. I have a couple of responses. So, first of all, the plan administrator has an independent duty to determine to be satisfied that the participant is single. It's not just the plan administrator can't just accept what anybody says. And that's in the plan as well as the statute. My point was a friendly point. Yes. Meaning that there was no exercise of discretion at that time. Because if we're asking him for was there a discretionary determination at that time that he, that Mr. Reed didn't qualify as a spouse, that was not made because the form says I'm single. Well, no determination was made. That's correct. And I think the question wasn't addressed. Right. No determination was made. I do want to say, though, because I think it's important, that even if a decision was made in 2009, even if there was a discretionary decision, there's no indication there was, but even if there was, that does not affect Mr. Reed's independent right to a survivor annuity under the terms of the plan. And that's a very important point, because we can't have a situation where whether  a spouse to his or her community property interest in a pension. And that's what this Court says in Hearn. So in Hearn, Mr. Hearn hornswoggled the plan administrator. He was deceitful. And the plan administrator acted in good faith in paying the benefit. But that does not take away Mrs. Hearn's community property right to a survivor benefit. We cannot have those spousal rights turning on the discretion of an administrator exercised at the time of retirement. And that's also not what the plan says. The plan says if the participant was married at retirement, the plan the — a surviving spouse shall receive a benefit. It is not conditioned on what form of benefit the — the employee's spouse received during his or her lifetime. Do you want to save your remaining time? Sotomayor, can I ask one quick, quick question? So what should the plan have done when Mr. Reed — Mr. Reed? Mr. Gardner? Checked a single? Well — What was their duty then? I believe that their duty was — they knew that they had a registered domestic partner sitting in their office checking single on a form. The plan should have looked at its own requirements in Section 7.06a. It should have looked at — it should have seen that it had not defined spouse. It should have said, well, then we turn to California law. What does California law tell us about the status of this person? But even — And not — and not look at DOMA at all? There's no reason to look at DOMA, because, again, DOMA dictates the requirements of ERISA. It dictates the minimum requirements. It — nothing about ERISA says a plan cannot — I know, and you've said that the plan can go beyond federal law, but does it have to? It — this plan does have to, yes. Because? Because it chooses California law, and because it leaves the term spouse undefined. If the — You have to go to DOMA, though, don't you, to see if the California law is in a manner consistent. You might decide it's — that it is, but you do have to get to the second part. You don't just stop at the California law. You have to look at the requirements, the minimum requirements of ERISA. And you have to say, will California law cause us to violate those minimum requirements?  Thank you. Thank you. May it please the Court, my name is Doug Pierce, and I represent the Appalese. First, I want to address this business about what does the plan require. It's undisputed that the plan administrator must administrate the plan consistent with the terms of the plan, and it is true that a plan could be written up to provide more benefits than the minimal guarantees under the statutes, but this plan did not. And for anyone to say that, well, they could have provided more benefits, they can only provide benefits that are specified in the plan. Okay. So I understand that argument, but how does that argument mesh with the plan having chosen California law and California law at the time having defined registered domestic partners as spouses? At the very same time that the plan said we follow California law, it said we interpret it and administer the plan under California law and ERISA and the code. No, it didn't say and, it said consistent with. That's right, it has to be consistent. Well, but her argument, I mean, the other side's argument is consistent with means not inconsistent with, not in conflict with. So the other side says, this is not in conflict with, it's more generous than ERISA requires. So what's your response to that argument? Consistent with some of the questions before, DOMA existed at that time. DOMA affected every federal statute, including the code and ERISA. And accordingly, ERISA said we do not allow a benefit. When you, when it says spouse, it means only an opposite sex spouse. Let me go, this is, I'll come back to the language in a moment, but this is more a conceptual question. Would it have been illegal under ERISA for the plan to have provided benefits to domestic registered partners if it had been very explicit that this was what it was doing? That would have definitely been permissible. And that's my point here. So the only question, then, is whether or not this choice of California law and then the idea of consistent with actually does do that. So it's not impermissible. The question is whether it does it. That's correct, Your Honor. And the result that the plaintiff is seeking is we have one and only one benefit that's at issue here, and there's one and only one contract provision that defines that benefit. And if you interpret that consistent with ERISA and the code as DOMA required them to be, that would be inconsistent with ERISA because ERISA said if it says spouse, it has to be an opposite sex spouse. So that would be an inconsistent determination. And what do we do if the word consistent here is ambiguous? You argue that consistent means parallel. The other side argues consistent means not inconsistent. So I view consistent here as ambiguous. Who wins? You cannot have one contract provision that on one hand says we are excluding this class of person and then say at the very same time under the same provision we are including this. But it doesn't say that. I mean, I think you have to look at the precise language of DOMA and, you know, the point made by Mr. Reed's counsel is that DOMA is not a ceiling that states can do other than. So states can have laws that are, in fact, are consistent or not inconsistent depending on how you phrase it with DOMA. So if that is really the meaning of DOMA, as later explained to us, why can't you have a state law that gives you more? Can't give you less, but it could give you more. The plan would have to adopt that. If the plan says we're going to follow ERISA and ERISA follows DOMA and DOMA says you cannot have the benefits going here, then that's how the benefits have got to go. That's kind of, that starts in the back end, not the front end. The front end says under California law, that's how this plan is administered. We go first to California law because we have to find out what's consistent or inconsistent with it. So you have to start with California law and not with DOMA. So if you do it that way, it seems to me, you come out with a different result than if you go your route, which is starting at the back end, what does DOMA say, therefore, you cannot have that under California law. With all due respect, I think the two are equal in stature with one another because you have to be consistent with both. And any time any contractual provision or contract says, hey, we're going to go with two different laws, there's always the possibility that there could be a conflict. And if we have a conflict in this situation, it is going to be the Federal law that controls because this is a — But in a way, you just conceded that there's no conflict because you conceded that if the plan is clear, it can be more generous than the minimum requirements of ERISA. So if the plan is clear, there's no conflict. The question is, what's the plan say? Yes, Your Honor. It is our position there is no conflict. But if there is a conflict, then the Federal law has to control because repeatedly the plan says this has to be a qualified plan, and the entity that's going to determine if it's a qualified plan is the IRS, the Federal government, and the IRS before Mr. Gardner talked. Wait a minute. Are you saying this would not be a qualified plan if, in fact, it were clear that there are offered benefits to domestic register partners? No, I'm not saying that. If the plan clearly — but it can't do it in the very same provision. It would have to say this is what we're offering under the — for the spouse under Federal law, and then they're going to have to say, and also for people who are not spouses under Federal law, we've got this provision here. But the plan doesn't say that. But does the plan — the plan decided to choose a state law provision, did it not? That is correct, Your Honor. And it might come out differently, say, in Wyoming or Kansas at that time, because there was no such law equivalent to the domestic partner law. Could the plan have chosen Federal law? A plan would be free to not pick up any state law, but ERISA plans typically do that to cover what the Federal law doesn't cover, such as a statute of limitations. But in all — But it's sort of like in for a dime, in for a dollar. Once you choose California law, you then can't pick and choose your way out of it, can you? I mean, you can't say, well, the domestic partner law is irrelevant. If there's a conflict, then I think the Federal law controls, and that's what the IRS has repeatedly said, is that they will not recognize something such as a registered domestic partnership. And if that — But if the state law does, I mean, that's — do you agree that, with respect to DOMA, we're looking at a floor-and-ceiling issue in terms of what DOMA does? This plan only has the floor. It did not have anything more than the floor. Except California law. So I'm asking, if you just take DOMA by itself, doesn't it say, well, this is basically the floor, not the ceiling, as to what might be permissible? Well, you can't get away from the IRS determinations of this matter. If we had to make this decision today, I mean, we have the further IRS clarifications on this matter. These are regulations that have the force of law, and they say that you cannot recognize in this plan, in this provision. It would have to be a separate provision. I don't have a problem if there's a separate provision, but we have one and only one benefit under this plan. I'm curious about the language in the denial letter. Where in the committee's denial letter does it say that Mr. Reed was not considered a spouse under federal law? It said he was not married. Well, where does it, it doesn't say that he was not married under federal law, and there's nowhere that DOMA is mentioned. Here you argue because it's DOMA, and at the denial letter, you don't mention DOMA at all. I find that very curious. Under federal law, including the IRS interpretations that are regulations, if they were registered domestic partners, they were not married, and that's, we relied, they were not married. That's what we said. I know, but aren't we bound by the explanation given in the denial letter? Well, first, let me say we're entitled to the abuse of discretion standard because all we were was just- No, we weren't. Don't we look at the denial letter, and in the denial letter, do you mention DOMA at all as a reason for denying him coverage? You know, I don't, we said they weren't married. That's a simple answer. Do you want to look at it? Because I don't see DOMA. Do you acknowledge that DOMA's not written in there anywhere? I don't think we cited any law. We didn't have to cite any law. We just said you were not married. You're citing no law now. You're citing DOMA. Oh, absolutely. I'm now in this courtroom. I'll file like a 50-page brief. We cite a lot of things, but the administrator, yeah, it's like a two-paragraph letter. The administrator, they don't have to file a 50-page brief to address the issue. They said they- I only need, the thing is that we don't know, for example, because of the truncated decision, which is not an unusual one necessarily, but we don't know whether the administrator actually went through this process in the choice of law provision 2.03, do we? No. What I would say is this. So the answer is no, we don't know that. I suppose you could also say we also don't know if they decided that DOMA dictated their result because we don't, they don't say that one way or the other. We just don't know. I don't think that the letter had to spell it all out if they went through that process. Well, it might not, but how do you know it went through, what process it went through? Well, that's the point I've made in my brief. I know it because my law partner, long before Mr. Gardner ever retired, was fully advised of this situation. And I totally appreciate that. It's just that's not reflected in this record of decision. That is right. And this went off on- I appreciate, you know, where, how people might have come out in different ways possibly at that time, but we're, with all respect to your law partner, aren't we pretty well stuck with what the plan said in the decision? We're always stuck with what the plan says, and the plan provides one and only one benefit, and it says it has to be consistent with ERISA, which involved DOMA. And if that is inconsistent with California law, and we don't agree that it is, then Federal law would take precedence. And you can't have one provision that says at the same time it's included and then excluded. That would be an abuse of discretion to come up with that kind of theory. Was there an abuse of discretion, or was there even an exercise of discretion? There was an- At the time of Mr. Gardner's retirement. At the time of his retirement, it was an extremely limited discretion because, as the Court's said, he was single. We accept that he was single. That's all the discretion that was necessary. Well, I'm not sure there was any discretion whatsoever. If he was single, he's single, and he's not, and he gets the benefits that a single person gets. End of story. I'm not sure there was an exercise of judgment or discretion. I mean, that was the end of, that was the end of the matter. Well, you know, every day people are retiring, and it doesn't mean you have to go behind it. Some decisions can be extremely simple, and still it's an act of discretion. I mean, they made the decision based upon their understanding of the law, and that was an act of discretion at that time. Well, no, it couldn't have been an act of discretion because the law was so clear under the plan, if he was single, that's the answer. There's no possible discretion. They would have been out of their minds had they treated him as married and given him a reduced benefit. How can that possibly be an exercise of discretion when he says he's single, and they apply the Okay, you're single. Here's what happens. I agree. And I don't think you get into any kind of evaluation of discretion at that point. So my point is, I don't think that was an exercise of discretion at the time of retirement. There might have been at the time of denial when Mr. Reed claims, but I don't think that was an exercise of discretion in 2009. Well, that's what I'm saying. This went off on motion for judgment on the pleadings, and the allegation in the complaint is that we did not investigate the matter, and we denied that allegation because I know we did investigate that matter. And if that becomes the issue of the court, then there is not judgment entered in favor of the plaintiff. Rather, we'd have to go back and show that the investigation that was done. Because if you had Mr. Gardner had been married to a female spouse, and they were not getting along too well, and we've seen this in a lot of ERISA cases, Hearn and others, and he checks single because he figures, okay, I'm going to take my money and run, so to speak. I'll just take it and use it as I wish, and she doesn't need to know about that. Would you have the same answer here, that it wouldn't matter? She doesn't get her money? No, Your Honor. That is the Hearn situation. There you had a mistake as to the facts. There was no mistake as to the facts here, which once again goes to why the discretion There's no getting back to the original decision in 2009. There was no mistake of fact. And so there's really nothing to analyze at that point, except maybe the law, and that's what we did analyze, and under DOMA, they were not married. And to finish up, just they have the discretion. The other side cites to the Jebbian opinion, but that was a situation where the planned language said, if you don't make a decision, if we don't make a decision in 120 days, it's denied. And that was no exercise of discretion. Since that time, this Court has repeatedly said, if you're just a little late in exercising discretion, that does not deprive you of that discretion. Mr. Pierce, if I can ask, it seems like a lot of interesting questions here and some I'm just wondering, would you be open to mediation in this case? Open to mediation? Yes. Well, that's a question for my client, so I would have to take that to my client. I'm not in a position to say one way or the other. Okay, if I can detain you one more minute. When we say exercise of discretion or abuse of discretion, and we are reviewing a decision of a lower court judge, if the judge makes an error of law, that is by definition an abuse of discretion. Now, what if the plan makes an error of law? Is that a permissible exercise of discretion or is that just an error of law? If they're clearly wrong on the law and the law is clear, then yes. If there's interpretations of the law, they could go with one. And as I've pointed out, the IRS has repeatedly, both before and since, and always consistently in the Department of Labor, said that does not qualify as a marriage. Well, I understand that, but you're avoiding the point that's made by the other side every time you say that, because the question is whether or not it is, when they say consistent, does that mean in conflict with, in which case your argument doesn't fly? So you keep saying that, but it doesn't respond to the point the other side made. Well, then, just to finish up, what I would say is, if that would be inconsistent with ERISA to say that this one contractual provision gives the benefit and takes the benefit away at the very same time. Thank you. I'd like to briefly address consistent with. In the plan, it's consistent with the requirements of ERISA. So it's not consistent. The plan is not saying we're going to use every word in the same way that Federal law uses that word. It's saying that we're going to interpret our plan consistent with what the – what ERISA requires of us. And ERISA doesn't have any requirements with respect to registered domestic partners. It only has – I think the other side can see it at that point. Yes. So I think that it's important to note that it's consistent with the requirements, not consistent with every aspect or usage in the statute. Well, of course, as I understand his argument, he would say, well, the requirement in DOMA is that spouse means X and marriage means Y. And that is not consistent with the California law. I can understand that point, but the plan does not say that it's to be interpreted in accordance with the requirements of DOMA. It only says it's to be interpreted in accordance with the requirements of ERISA and the Code. And ERISA and the Code have nothing in and of themselves to say about who's married or who's not. They have requirements for spousal protections that are minimum requirements that this plan meets. But this plan goes beyond them, not just with respect to registered domestic partners. Sections — You would say that even though the Supreme Court has said that DOMA was the controlling interpretation of words like in the tax code, that that's irrelevant, then, in interpreting this clause? Well, the Supreme Court has said, yes, I would say that DOMA is irrelevant to interpreting this clause. I agree with that. I mean, the Supreme Court has said that DOMA is — was never good law. I mean, it was — it's an unconstitutional law. It applied retroactively to the parties before the Court in Windsor. The — Ms. Windsor's obligation to pay a State tax in 2009, right around the time that Mr. Gardner retired, was not — was to be determined without regard to DOMA. She was a spouse in 2009, just as Mr. Gardner was. So under that argument, even if we accept the premise of the other side, well, we read retroactively the meaning of DOMA today, which is to say that DOMA is unconstitutional. Right. That's — that's correct. I mean, it cannot be — Or it would read it out of consideration, and then you just look to, well, what does the code say, and what does the ERISA say, and they don't say. Exactly. It cannot be the case that Mr. Reed's right to a spousal benefit in 2016 is controlled by a law that was held unconstitutional by the Supreme Court three years earlier. That cannot be the case. Thank you. Thank you, Your Honor. I'd like to thank both counsel for the argument this morning and also the briefing. That's very helpful. The case of Reed v. KRON and IBEW is submitted. Our next case for argument is Winding Creek Solar v. Petterman.
judges: McKeown, W. Fletcher, Murguia